OPINION
Before us on appeal are Plaintiffs-Appellants John and Tawnya Marshall who claim the trial court erroneously granted summary judgment to Defendants-Appellees Jerry and Nancy McGlone. The Marshalls and McGlones completed a real estate transaction in early 1999, but not to the satisfaction of either party. Each claimed entitlement to $1,000 that had been deposited in "escrow"[1], and disputes arose respecting the date the Marshalls were supposed to have vacated the premises; the McGlones held the belief that the Marshalls were to leave the premises by February 28, 1999, and the Marshalls understood the date to be March 15, 1999. The Marshalls also challenge the trial court's grant of summary judgment to the McGlones on their counterclaim in which the McGlones sought to recover monies they paid for various expenses relating to the property during that fifteen-day interval.
The terms of the transaction were originally set forth in a contract signed by all parties and dated September 29, 1998. According to that agreement, the transaction was to close on November 3, 1998, and if it did not, the defaulting party would forfeit the Marshalls' $1,000 earnest money which was held in escrow. In addition, the contract provided that the Marshalls were to be given ten days after closing in which to surrender possession of the property. Since the transaction did not close by November 3rd, however, the contract expired. Nevertheless, the McGlones' real estate agent pursued alternative methods of financing, and was successful in persuading the Marshalls' land contract holders to permit the McGlones to assume the Marshalls' land contract.
The parties agree that the transaction was closed on February 8, 1999. No written contract executed by the parties and specifying the terms of their agreement has been produced by either party. The McGlones included a copy of a document they contend was signed by all parties at the closing, but it bears no signatures. They claim that someone at the closing "walked off" with the original signed document, and that it has never been found. The unsigned document, dated February 8, 1999, and entitled "Escrow Addendum" designates February 28 as the occupancy date by which the Marshalls must have cleared the property of trash and vacated the premises. It also provides that if the Marshalls do not do so by that date, the $1,000 held in escrow would be forfeited to the McGlones.
On the other hand, the Marshalls argue that they never signed any document resembling the one submitted by the McGlones, and have provided a copy of a February 26, 1999, document entitled "Possession Agreement" which specifies that the Marshalls' right to possession of the property would expire on March 15, 1999. That document, however, is signed only by the Marshalls.
On April 7, 1999, the Marshalls filed their complaint in the Municipal Court of Kettering claiming that the McGlones had breached the "possession agreement", that Jerry McGlone had breached his fiduciary duty as escrow agent for the $1,000 placed in escrow, and that the McGlones had engaged in harassment and malicious conduct toward the Marshalls. In their prayer for relief, the Marshalls requested return of the $1,000 held in escrow, $5,000 in punitive damages, and attorney's fees.
In response, the McGlones filed an answer denying the Marshalls' allegations and a counterclaim in which they sought recovery of $8,729.37 in damages that they claim to have incurred as a result of the Marshalls' retention of the property past February 28, 1999. Eventually, the McGlones filed a motion for summary judgment to which they attached numerous affidavits, documents, and photographs, and in which they reduced the damages sought in their counterclaim to $5,015.65. The Marshalls responded with a memorandum opposing the McGlones' motion for summary judgment, but attached no affidavits or other evidentiary material of the type listed in Civ.R. 56(C) or (E).
The trial court's November 30, 1999, judgment entry reads, in its entirety, as follows:
 This matter coming before the Court on Defendants' motion for summary judgment with attached affidavits and Plaintiffs' response thereto which consists of a memorandum in opposition which disputes the allegations made in the motion for summary judgment and affidavits but does not conform to the requirements of Rule 56 of the Ohio Rules of Civil Procedure, specifically, there are no affidavits attached.
 Ohio law is quite clear that an individual may not rely on their general pleadings, that is, complaint, [sic] or answer[,] in responding to a motion for summary judgment with attached affidavits. The memorandum filed by Plaintiffs is no more than an answer.
 The Court, therefore, upon reviewing Defendants['] motion with supporting documentation and the exhibits submitted as well as the pleadings, is of the opinion, [sic] that Defendants have met their burden under Rule 56; that there is no genuine issue as to any material fact remaining and that Defendant is entitled to judgment as a matter of law.
 The Court, [sic] does, therefore, order, [sic] that final judgment be rendered in favor of Defendant and against Plaintiff in the within action and that final judgment be rendered in favor of Defendant on Defendant's counter-claim and that they shall retain the $1,000 escrow money as well as have final judgment in their favor against Plaintiff in the sum of $5,015.65, plus costs, with interest at the rate of 10% per annum from the date of this judgment.
The Marshalls now bring this appeal asserting two assignments of error, which both claim the trial court erred in granting summary judgment to the McGlones. As we address the Marshalls' assigned errors, we are mindful that an appellate court reviews a trial court's grant of summary judgment de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Whether summary judgment is appropriate hinges upon the movant's demonstration (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). In addition, the burdens placed upon both the movant and nonmovant in a motion for summary judgment are as follows:
 [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The court had previously held that "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production." Wing v. Anchor Media,Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus. In Dresher, however, the court expressed a belief that its holding in Wing was too broad. Thus, after Dresher, a nonmovant is required to produce evidence only on those issues upon which the movant has sustained his or her initial burden as explained above. It is with these principles in mind that we approach the merits of the Marshalls' two assignments of error.
 I.
The lower court erred in granting summary judgment for Defendants.
The Marshalls first argue that their failure to respond to the McGlones' motion for summary judgment with affidavits or other evidence of the type mentioned in Civ.R. 56 should not automatically result in a judgment in favor of the McGlones. In support, they cite Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45,47, wherein the Ohio Supreme Court stated that a nonmoving party's complete failure to respond to a movant's motion for summary judgment, in and of itself, is not enough to warrant granting the motion. Instead, the court said, the moving party must still satisfy its initial burden of showing that reasonable minds could come to only one conclusion, that being against the nonmoving party. Id. In other words, that the nonmovant fails to respond to the movant's motion for summary judgment does not nullify the movant's burden to show that no genuine issues of any material fact exist for trial. Thus, our first inquiry in the present case is whether the McGlones satisfied their initial burden respecting their motion for summary judgment. Since the Marshalls have advanced a separate assignment of error challenging the propriety of the trial court's judgment as it relates to the harassment and malicious conduct count of their complaint, however, we will restrict our discussion here to the breach of contract and breach of fiduciary duty counts of the complaint, and to the McGlones' counterclaim against the Marshalls.
In count one of their complaint, the Marshalls alleged that the McGlones breached the "Possession Agreement" attached to their complaint, but which was not signed by the McGlones and bore only the Marshalls' signatures. The Marshalls did not then, nor do they now claim that the McGlones had ever signed the document. In the second count of their complaint, the Marshalls alleged that Jerry McGlone had breached his fiduciary duty as holder of the escrowed funds by not returning the money to the Marshalls. This claim is dependent on the first because the Marshalls would be entitled to a refund of the escrowed funds only if the McGlones breached their "agreement" with the Marshalls.
 The McGlones' motion for summary judgment was strongly supported by affidavits, photographs, and other documentary evidence. Among the affidavits was one jointly made by Jerry and Nancy McGlone in which they stated they were present at the February 8 closing and described the relevant terms of the document that mysteriously disappeared following its signing at that meeting. According to the McGlones, the closing documents stated that possession of the premises would go from the Marshalls to the McGlones on February 28, 1999, and that the $1,000 held in escrow was to be released to Jerry McGlone who would act as escrow agent pending the Marshall's vacation of the property by the February date. In addition, the McGlones referenced a document entitled "Escrow Addendum Regarding Possession," a copy of which they also attached to their motion for summary judgment. No signatures appear on that document, however, though the words "original signed" have been handwritten across the signature lines. Also present at the February 8 closing were Joyce Sheaffer Addison, the McGlones' real estate agent; James Coyle, Ms. Addison's colleague; Norma and William Schweller, holder of the Marshalls' land contract on the property; and Michael Schweller, son of Norma and William. Each submitted an affidavit corroborating the McGlones' statements concerning the date to which the McGlones were entitled to possession of the premises and the escrow funds.
Like the trial court, we find the McGlones satisfied their initial burden of showing that there was no genuine issue as to any material fact with respect to the first and second counts in the Marshalls' complaint. Although a written memorial of the agreement struck between the parties was not presented, the affidavits from seven people present at the closing all state that the Marshalls agreed to vacate the premises by February 28, 1999, and that the $1,000 held in escrow was to be disbursed to Jerry McGlone. (We point out that in arriving at this conclusion, we place no weight on the unsigned "Escrow Addendum Regarding Possession" submitted by the McGlones.)
As for the McGlones' counterclaim against the Marshalls, we observe that in their affidavit, the McGlones also itemized expenses totaling $5,015.65 that they had incurred as a result of the Marshalls' refusal to vacate the property by February 28, 1999, and the Marshalls' failure to pay various bills relating to the property prior to that date. In addition, receipts for some of the expenditures were included with the McGlones' motion for summary judgment. Thus, the McGlones met their burden of showing there was no genuine issue of material fact remaining for trial with regard to their counterclaim against the Marshalls.
Having found that the McGlones met their burden respecting the first and second counts in the Marshalls' complaint and the McGlones' counterclaim, we next consider whether the Marshalls satisfied their reciprocal burden as described above.
As we have noted, the Marshalls did not respond to the McGlones' motion for summary judgment with any evidence of the type listed in Civ.R. 56. Instead, they submitted only their memorandum in opposition to the McGlones' motion in which they discussed the various factual points over which they and the McGlones disagreed, and launched unsubstantiated accusations against the McGlones and their affiants claiming they were in collusion together and that their version of the events was fictitious. Consequently, the Marshalls did not meet their burden to show that there was a genuine issue of material fact remaining for trial with respect to the first and second counts of their complaint or the McGlones' counterclaim. To that extent, the trial court correctly granted summary judgment to the McGlones.
The Marshalls' first assignment of error is not well taken.
 II.
The lower court erred by denying Plaintiffs their right to prove by trial that Defendants are guilty of harassment and malicious conduct.
In their second assignment of error, the Marshalls claim that the McGlones presented no evidence showing an absence of a genuine issue of material fact with respect to the third count in the Marshalls' complaint. After careful review of the entire record before us, we find that the Marshalls are correct, and that as a consequence, the McGlones have failed to satisfy their initial burden of demonstrating the absence of a genuine issue of material fact concerning that claim and their entitlement to judgment as a matter of law. Kulch v. Structural Fibers, Inc.
(1997), 78 Ohio St.3d 134, 147; Dresher, supra. As such, the Marshalls were not obligated to respond to the McGlones' motion for summary judgment by producing evidence on every element of harassment and malicious conduct claim. Kulch, supra; Dresher,supra.
Accordingly, we find the trial court erred in granting summary judgment to the McGlones on the Marshall's third claim in their complaint. The Marshalls' second assignment of error is sustained.
Having overruled the Marshalls' first assignment of error and sustained their second, we remand this cause to the trial court for further proceedings not inconsistent with this opinion.
WOLFF, J. and FAIN, J., concur.
[1] Although both parties refer to the $1,000 as having been placed in "escrow," the funds were only truly in escrow prior to February 8, 1999, the date of the closing. On that date, the money was transferred to Jerry McGlone, who was then appointed the new "escrow agent." Of course, appointing Mr. McGlone as an escrow agent completely demolished any legitimacy or validity of the purported "escrow" since that term is defined as "money * * * delivered by the grantor, promisor or obligor into the hands of a third person, to be held by the latter until the happening of a * * * performance of a condition, and then by him delivered to the grantee, promisee, or obligee. A system of document transfer in which * * * funds, or other property is delivered to a third person
to hold until all conditions in a contract are fulfilled." Black's Law Dictionary (6 Ed.Rev. 1990) 545 (emphasis added). The practice, if it is one, of having an interested party hold "escrowed" funds is an invitation to a lawsuit, and extremely ill-advised. Nevertheless, since the parties refer to the funds as "in escrow" so shall we. However, we reject the notion that the arrangement here fulfilled the legal definition of an escrow.